Case No. 14-5001 / 14-5058

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

VIRTUAL STUDIOS, INC.,

Appellee / Cross-Appellant

v.

BEAULIEU GROUP, LLC,

Appellant / Cross-Appellee

On appeal from the United States District Court for the
Eastern District of Tennessee at Chattanooga

VIRTUAL STUDIOS' BRIEF

Michael A. Anderson
McKinley S. Lundy, Jr.
Patrick, Beard, Schulman & Jacoway, P.C.
537 Market Street, Suite 202
Chattanooga, TN 37402
(423) 756-7117

*Attorneys for Virtual Studios, Inc.*

## Disclosure of Corporate Affiliations
## and Financial Interests

Pursuant to 6th Cir. R. 26.1, Virtual Studios, Inc. makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation?

   No.


2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

   No.

# Table of Contents

Request for Oral Argument ................................................................ ix

Statement of the Issues ..................................................................... 1

Statement of the Case ...................................................................... 3

    A.    Virtual performed graphic design work for
customers in the carpet industry .................................... 3

    B.    Beaulieu began using Virtual for room scene
manipulation in the late 1990s ....................................... 4

    C.    Virtual discovered that Beaulieu had been
impermissibly using its room scenes ............................. 6

    D.    After filing suit, Virtual conducted extensive
discovery and litigated numerous pre-trial
motions filed by Beaulieu ................................................ 9

    E.    After a six-day trial, the jury ruled in Virtual's
favor in every regard, found that Beaulieu's
infringement was willful, and awarded
Virtual $1,950,000 in damages .................................... 11

    F.    The district court denied Beaulieu's Rule 50
motion and issued a permanent injunction that
Beaulieu no longer challenges ...............................12

Summary of Argument .................................................................. 14

Argument ...................................................................................... 18

A.   Beaulieu cannot satisfy its burden under
     Rule 50 to prove the total absence of
     evidence upon which a reasonable juror could
     have ruled in Virtual's favor ......................................... 18

     1.   A court may not replace its judgment for
          the jury's or reweigh the evidence, and
          may reverse a verdict only where there is
          no evidence supporting it ..................................... 18

     2.   Beaulieu has not shown the total absence of
          evidence that could support the jury's
          verdict ................................................................. 22

     3.   There is no evidence that the jury awarded
          damages solely or even partially on the basis
          of photos from Beaulieu's website ....................... 26

     4.   Only twelve of Virtual's images were on
          Beaulieu's website, so the jury's award
          could not have been based only on the
          internet screenshots ............................................ 30

     5.   Beaulieu cannot overcome the presumption
          that the jury properly followed the
          Court's instructions ............................................. 32

B.   The jury's award of statutory damages is within
     the range permitted by Congress, is not
     grossly excessive, and does not offend due process ...... 34

     1.   Juries have almost unfettered discretion
          to set statutory damages awards anywhere
          within the range permitted by law ...................... 34

iii

2. The due process standards that govern punitive damages in tort cases are inapplicable to statutory damages in copyright litigation ............................................... 38

3. Beaulieu has not overcome the extraordinary deference due the jury, and its reliance on punitive-damages guideposts and proportionality is misplaced.............................42

C. The district court departed from black-letter law when it denied Virtual's attorneys' fees request, and therefore abused its discretion.............................. 45

1. A party that prevails on its copyright claim is usually entitled to recover its costs and reasonable attorneys' fees ............................ 45

2. Virtual is the prevailing party and is entitled to recover reasonable attorneys' fees for the work its attorneys performed in this case .......... 48

3. The attorneys' fees Virtual requests are reasonable and the Court should award them in their entirety........................................... 52

Conclusion....................................................................... 54

Certificate of Compliance with Rule 32(a) ..................................... 56

Certificate of Service........................................................ 57

Designation of Documents.............................................................. 58

# Table of Authorities

## *Cases*

*Adsani v. Miller*, 139 F.3d 67 (2d Cir. 1998) .................................... 53

*Baker v. Windsor Republic Doors*, 414 Fed. Appx. 764
(6th Cir. 2011) ................................................................................ 18

*Balsley v. LFP, Inc.*, 691 F.3d 747 (6th Cir. 2012),
cert. denied, 133 S. Ct. 944 (U.S. 2013) ........................ 19, 35, 46, 47

*Barnes v. Owens-Corning Fiberglas Corp.*,
201 F.3d 815 (6th Cir. 2000) ........................................................ 20

*Boyle v. Pool Offshore Co., Div. of Enserch Corp.*,
893 F.2d 713 (5th Cir. 1990) ........................................................ 21

*Bridgeport Music, Inc. v. WB Music Corp.*
*(WB Music II)*, 520 F.3d 588 (6th Cir. 2008) ................................. 46

*Broad. Music, Inc. v. DK 547, LLC*, Civil Action 2:11-CV-1064,
2013 U.S. Dist. LEXIS 54033 (S.D. Ohio Apr. 15, 2013) .............. 50

*Broad. Music, Inc. v. H.S.I., Inc.*, Case No. C2-06-482,
2007 U.S. Dist. LEXIS 86642, (S.D. Ohio Nov. 26, 2007) ............. 50

*Broadcast Music v. Star Amusements*,
44 F.3d 485 (7th Cir. 1995) .......................................................... 37

*Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899
(8th Cir. 2012), cert. denied, 133 S. Ct. 1584 (U.S. 2013)... 35, 39, 40

*Clarksville-Montgomery County School
System v. United States Gypsum Co.*,
925 F.2d 993 (6th Cir. 1991) ........................................................... 20

*Controversy Music v. Down Under Pub Tyler, Inc.*,
488 F. Supp. 2d 572 (E.D. Tex. 2007) .............................................. 50

*Cornerstone Home Builders, Inc. v. McAllister*,
303 F. Supp. 2d 1317 (M.D. Fla. 2004) ........................................... 34

*Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*,
528 F.3d 1001 (8th Cir. 2008) .................................................... 18, 20

*Davis v. Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001) ............................. 34

*DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666 (6th Cir. 2006) ........ 47

*Disney Enters. v. Farmer*, 427 F. Supp. 2d 807
(E.D. Tenn. 2006) ............................................................................. 47

*Disney Enters. v. Hammond*, Civil Action 2:05-cv-742,
2006 U.S. Dist. LEXIS 3135 (S.D. Ohio Jan. 27, 2006) ................. 47

*Douglas v. Cunningham*, 294 U.S. 207 (1935) .......................... 36, 38

*Dream Games of Ariz., Inc. v. PC Onsite*,
561 F.3d 983 (9th Cir. 2009) ........................................................... 37

*Dunaway v. Moore*, Nos. 94-6068 & 94-6125,
1996 U.S. App. LEXIS 8257 (6th Cir. Mar. 7, 1996) ..................... 20

*F. W. Woolworth Co. v. Contemporary Arts, Inc.*,
344 U.S. 228 (1952) ......................................................................... 36

*Floyd v. Laws*, 929 F.2d 1390 (9th Cir. 1991) ................................ 21

*Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398
(S.D.N.Y. 2002) ............................................................. 50

*Howard D. Jury, Inc. v. R & G Sloane Mfg. Co.*,
666 F.2d 1348 (10th Cir. 1981)...................................... 21

*Jacobs v. Memphis Convention & Visitors Bureau*,
Case 2:09-cv-02599-STA-cgc, 2012 U.S. Dist. LEXIS
137344 (W.D. Tenn. Sept. 7, 2012)...................... 48, 50–52

*King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812
(M.D. Tenn. 2006) ................................................... 36–37

*Little v. Green*, 428 F.2d 1061 (5th Cir. 1970)........... 20–21

*Manno v. Tenn. Prod. Ctr.*, Inc., 657 F. Supp. 2d 425
(S.D.N.Y. 2009) ............................................................ 37

*Mary Ellen Enters. v. Camex, Inc.*, 68 F.3d 1065
(8th Cir. 1995) ............................................................. 34

*Simpleville Music v. Mizell*, 511 F. Supp. 2d 1158
(M.D. Ala. 2007).......................................................... 53

*Sony BMG Music Entm't v. Tenenbaum*,
719 F.3d 67 (1st Cir. 2013) .......................................... 42

*St. Louis, I. M. & S. R. Co. v. Williams*, 251 U.S. 63 (1919)........... 35

*Tcp Indus. v. Uniroyal, Inc.*, 661 F.2d 542 (6th Cir. 1981)............. 19

*Thoroughbred Software Int'l, Inc. v. Dice Corp.*,
488 F.3d 352 (6th Cir. 2007)...................................... 36–37

*Whitesell Corp. v. Whirlpool Corp.*,
496 Fed. Appx. 551 (6th Cir. 2012) ........................... 19, 25

*Zomba Enters. v. Panorama Records, Inc.*, 491 F.3d 574
(6th Cir. 2007), cert. denied, 553 U.S. 1032 (2008)............. 38, 41–42

## Statutes

17 U.S.C. § 412.................................................................... 22

17 U.S.C. § 504(c)............................................................... 35

17 U.S.C. § 505.................................................................... 45

## Request for Oral Argument

Though Beaulieu does not challenge the jury's finding of willful infringement, nor contest the trial court's injunction against it, it seeks to deprive Virtual Studios of any monetary relief. Beaulieu's appeal therefore implicates a fundamental purpose of United States copyright law—the prevention and redress of the intentional misappropriation of another's creative work—and likewise warrants oral argument.

The separate issue Virtual has appealed is no less worthy of oral argument. The district court chose to make Virtual the exception to the oft-stated rule that attorneys' fees awards are the norm for prevailing plaintiffs in copyright cases. Though Virtual's victory was decisive, and the jury's verdict wholly one-sided, the district court denied Virtual the ability to recoup *any* of the fees or expenses it incurred during more than eighteen months of litigation with Beaulieu.

Virtual therefore requests the opportunity to orally argue its position before the Court in this appeal.

## Statement of the Issues

1. **Entitlement to statutory damages** – Reversal of a jury verdict under Rule 50 is appropriate only when there is a complete absence of evidence to support the verdict, so that no reasonable juror could have found for the nonmoving party. In this case, Virtual demonstrated that Beaulieu willfully infringed dozens of copyrighted works well after they were registered, and that there was no evidence that Beaulieu used many of those works before registration. Is there any evidence in the record from which a reasonable juror could have concluded that some of Beaulieu's infringement began after Virtual registered its copyrights?

2. **Speculation about a jury verdict** – Under Rule 50, a court cannot overturn a verdict by speculating about a jury's motives or methodology. Here, the jury awarded Virtual statutory damages for thirteen of Beaulieu's seventy-two infringements, though, in accordance with its instructions, it did not specify which of the infringements comprised the thirteen. Should the Court upend the jury's verdict by speculating about the identity of the thirteen infringements?

3. **Extraordinary deference for statutory awards** – Under copyright law, a jury's statutory damages award is given ex-

traordinary deference on appeal and may not be remitted solely because it may be disproportionate to a plaintiff's "actual" damages. In this case, Beaulieu argues that the jury's award is excessive chiefly because it is disproportionate to Virtual's potential actual damages. Given that the jury's award is within the statutory limits for willful infringement, has Beaulieu overcome its extraordinary burden?

**4.   Prevailing party's attorneys' fees** – Attorneys' fees awards are "routinely" given to prevailing copyright plaintiffs, are "the rule rather than the exception," and are especially appropriate where a jury has found that infringement was willful. Here, the jury rejected Beaulieu's counterclaim and defenses, found that Beaulieu willfully infringed Virtual's copyrights, and awarded Virtual the maximum amount of statutory damages permitted by law. Did the trial court err when it wholly barred Virtual from recovering any portion of its fees and expenses from Beaulieu?

## Statement of the Case

### A. Virtual performed graphic design work for customers in the carpet industry.

Virtual Studios is a graphic design firm that creates virtual "room scenes" in which carpet manufacturers display their products. (Trial Transcript (Day 1), R.E.126 at Page ID # 3428–29.) To create these room scenes, Virtual photographed actual rooms and then digitally manipulated the photographs to "drop in" a customer's carpet. (*Id.* at Page ID # 3424–25, 3429.) After the manipulation, the carpet would appear in the photo as if it was present in the room when the photograph was taken. (*Id.* at Page ID # 3429.) This allowed Virtual's clients to advertise their carpets in room scenes while foregoing the expense of photographing full-size carpets in rooms one at a time. (*Id.*)

The room scenes Virtual offered its clients ranged broadly in type and style. There were pictures of bedrooms, bathrooms, dining rooms, and living rooms in houses of varying decorum, just as there were images of offices and school rooms. (Virtual's Room Scene Catalog, Pl.'s Ex. 7, App. Vol. III at 2363–2496.) Virtual obtained a few of these pictures from another company, but the vast majority of its huge room scene library consisted of images its staff photog-

raphers took. (Trial Transcript (Day 2), R.E.127 at Page ID # 3554, 3660.)

When clients wanted to use one of these room scenes to advertise their products, they had three different license options:

Option 1:    They could purchase a room scene outright for a flat fee.

Option 2:    They could purchase the exclusive right to use one of Virtual's room scenes for one year for a flat fee, though they had to hire Virtual to perform any additional manipulations of that image during the one-year term.

Option 3:    They could obtain the non-exclusive right to use one of Virtual's room scenes for one year for no initial fee, though they had to hire Virtual to perform any manipulations of that image during the one-year term.

(Trial Transcript (Day 1), R.E.126 at Page ID # 3456–57.)

## B. Beaulieu began using Virtual for room scene manipulation in the late 1990s.

In the late 1990s, Virtual began doing work for Beaulieu, one of the largest carpet manufacturers in the world.[1] (*Id.* at Page ID #

---

[1]    http://www.blissflooring.com/bliss/about/beaulieu/beaulieu/floor-covering.aspx (last accessed May 5, 2014). On its official website, Beaulieu claims that it is "the third largest flooring manufacturer and the largest carpet-only maker in the world," and states that its "[a]nnual sales top over $1 billion."

3421, 3450–51.) At that time Beaulieu already owned a number of room scenes, so it used Virtual only for its manipulation service. (Trial Transcript (Day 1), R.E. 126 at Page ID # 3451–52.) But within a couple of years, Beaulieu started obtaining new room scenes from Virtual's library. (*Id.* at Page ID # 3455–56.) Though Virtual's president, Tom Sucher, offered Beaulieu all three of Virtual's room scene options, Beaulieu only wanted to do business under the terms of Option 3. (*Id.* at Page ID # 3458–60.)

So, starting around 2000, Virtual began providing room scene images to Beaulieu under a non-exclusive, one-year term of use. (*Id.*) As the companies did business under these terms, Virtual issued invoices detailing its work and charges. (*Id.* at Page ID # 3465–67.) Though the terms of Option 3 were not listed in the invoices, each did contain written "Terms and Conditions" outlining a number of the parties' rights and responsibilities. (*Id.* at Page ID # 3467.) And indeed, some of these reflected the limited nature of Beaulieu's license to use Virtual's room scenes under Option 3, including the one-year term. (Id. at Page ID # 3468–70.)

## C. Virtual discovered that Beaulieu had been impermissibly using its room scenes.

In late 2007 or 2008, Virtual discovered that Beaulieu had not been abiding by the terms of the license. Mr. Sucher found some of Virtual's images on a Beaulieu display in a retail store that violated the use and manipulation conditions of the license. (*Id.* at Page ID # 3484.) And around this same time, he observed impermissible use of twelve of Virtual's images on Beaulieu's website. (*Id.* at Page ID # 3485–89.)

Mr. Sucher brought this to Beaulieu's attention, and had discussions with executives at Beaulieu in 2008 about how to remedy the problem. (*Id.*) An art director in Beaulieu's marketing department, Bruce Stern, was one of the first people to work with Mr. Sucher on this issue. (*Id.*; Trial Transcript (Day 3), R.E. 128 at Page ID # 3819.) After discovering that his employer's website did in fact contain images that belonged to Virtual, Mr. Stern agreed that those twelve images should be removed. (Trial Transcript (Day 1), R.E. 126 at Page ID # 3486.) He then allegedly instructed a web designer to remove them (*Id.* at Page ID # 3488–89),[2] and agreed that Beaulieu should pay an invoice for the impermissible use of

---

[2] Despite Mr. Stern's representations, it took over a year for Beaulieu to remove the twelve Virtual images from its website. *Id.*

the twelve images online.[3] (*Id.* at Page ID # 3488; Trial Transcript (Day 2), R.E. 127 at Page ID # 3674–76.)

But aside from those overtures, Mr. Stern provided Virtual with little other assistance. So Mr. Sucher next broached the subject with Patricia Flavin, Beaulieu's Senior Vice President of Marketing. (Trial Transcript (Day 1), R.E. 126 at Page ID # 3489–90.) Over the remaining months in 2008 and first half of 2009, the two engaged in a series of discussions in an attempt to resolve the dispute. (Trial Transcript (Day 3), R.E. 128 at Page ID # 3738–46.) Virtual made a number of proposals, but Beaulieu did not accept them. (Trial Transcript (Day 2), R.E. 127 at Page ID # 3548–52.) Similarly, though Beaulieu made a number of offers during this period—such as offering to give "all" of its room scene work to Virtual for an unspecified length of time—Mr. Sucher never accepted any as a final resolution. (*Id.*; Trial Transcript (Day 3), R.E. 128 at Page ID # 3738–46.)

After months of this back and forth, Mr. Sucher emailed Ms. Flavin in the summer of 2009 to inquire about Beaulieu's ultimate

---

[3] Though Mr. Stern believed Beaulieu should pay that invoice, the company never did so. (Trial Transcript (Day 1), R.E. 126 at Page ID # 3481, 3488.)

intentions. (Trial Transcript (Day 2), R.E. 127 at Page ID # 3550–
52.) If the two companies could not work something out, Mr. Sucher
explained, Virtual would have to seek legal redress. (*Id.*) Ms. Flavin
responded to this email by repeating assurances she previously
made about providing Virtual with more work. (*Id.*) But she also
specifically addressed Mr. Sucher's legal threats:

**From**: Patricia Flavin
**To**: 'tom@virtualstudiosinc.com'
**Sent**: Thu Jul 02 14:02:09 2009
**Subject**: Re: Update

Tom
There are some room scenes on the way to you within the next two weeks. However, if
we are to continue to help in developing this relationship, I will need you to sign a
release to drop your grievances with the company.

I will have something drafted up next week and sent over to you.
Patricia

(Sucher-Flavin Email Exchange, Pl.'s Ex. 63, App. Vol. III at 2679–
81.)

Mr. Sucher did not respond to this request, nor did he ever sign
any settlement or release. (Trial Transcript (Day 2), R.E.127 at
Page ID # 3551.) About two years later, Virtual filed suit against
Beaulieu for copyright infringement. (Pl.'s Complaint, R.E. 1 at
Page ID # 1.)

**D. After filing suit, Virtual conducted extensive discovery and litigated numerous pre-trial motions filed by Beaulieu.**

Beaulieu's response to Virtual's lawsuit was near-absolute denial. (Def.'s Answer and Counterclaim, R.E. 7 at Page ID # 25–33.) It contended that there was no one-year license, and that instead it could do with Virtual's images what it pleased. (*Id.*; Trial Transcript (Day 3), R.E. 128 at Page ID # 3821–22.) Further, it argued that Virtual had no valid copyrights and therefore could not recover any damages even if there was some form of license controlling the parties' relationship. (Def.'s Answer and Counterclaim, R.E. 7 at Page ID # 31.)

In addition to asserting blanket denials, Beaulieu filed a countersuit against Virtual and claimed damages of its own. (*Id.* at Page ID # 33–37.) It contended that the parties actually settled Virtual's dispute during Ms. Flavin's and Mr. Sucher's discussions in 2008 and 2009, and therefore that Virtual's lawsuit was a breach of contract. (*Id.*)

Because of the divergence of their competing positions, the parties engaged in an extensive and complex discovery process. Over the course of fourteen months, the parties exchanged around

12,000 paper and electronic documents in total, presented thousands more for inspection, and conducted eight depositions.

When discovery ended, Beaulieu filed two summary judgment motions—one for its counterclaim and one for Virtual's copyright claim—that were supported by 1,345 pages of documentary exhibits. (Def.'s Summary Judgment Motions and Supporting Documents, R.E. 46–49 at Page ID # 191–1604.) After filing a competing brief that demonstrated substantial issues of material fact, Virtual was ultimately successful—it defeated both of Beaulieu's summary judgment motions.[4] (Pl.'s Response to Summary Judgment Motion and Statement of Facts, R.E. 51 and 52 at Page ID # 1608–1921; Memorandum Opinion and Order Denying Summary Judgment, R.E. 83 and 84 at Page ID # 2928–46.)

Once Virtual prevailed, it spent the month leading up to trial preparing its case and filing or defending against dozens of pretrial motions, notices, and objections. (Pre-Trial Motions and Briefs, R.E. 59–67, 71–77, 80–82, 85–88, 93–95, 97, 101.) The subject matter of

---

[4] Virtual did not contest the dismissal of its state law claims in responding to Beaulieu's summary judgment motions, so substantially all of its response was devoted to preserving its copyright claim. (Memorandum Opinion Denying Summary Judgment, R.E. 83 at Page ID # 2944–45.)

these filings was broad, but most of them related to the scope of evidence and the format of the trial. (*Id.*) Both parties succeeded in some measure on these issues, and the Court allowed the case to proceed. (Order on Pre-Trial Motions, R.E. 99 at Page ID # 3021–24.)

**E.  After a six-day trial, the jury ruled in Virtual's favor in every regard, found that Beaulieu's infringement was willful, and awarded Virtual $1,950,000 in damages.**

The trial in this case took approximately six days, and occurred in two phases before a jury. The first phase, which lasted four days, was about Beaulieu's liability for copyright infringement. (Trial Transcript (Days 1–4), R.E. 126–29 at Page ID # 3380–4005.) At the close of the proof on liability, and after Beaulieu objected to the use of a general verdict form (Trial Transcript (Days 3 and 4), R.E. 128–29 at Page ID # 3900–01, 3950–51, 3983–89), the district court submitted twenty-two special interrogatories to the jury. (Jury Verdict Form (Liability), R.E. 110 at Page ID # 3225–29.) During its deliberations, the jury answered every one of these in Virtual's favor—Virtual established each element of its infringement claim, and Beaulieu failed to prove its affirmative defenses and counterclaim. (*Id.*)

11

The second phase of the trial, which lasted about two days, dealt with the damages Virtual could recover. (Trial Transcript (Days 5–6), R.E. 130–31 at Page ID # 4006–4296.) Following more of Beaulieu's objections to a general verdict form (Trial Transcript (Day 6), R.E. 131 at Page ID # 4218), the district court again submitted multiple interrogatories to the jury. (Jury Verdict Form (Damages), R.E. 123 at Page ID # 3338–40.) Among other things, the jury had to identify specific instances of Beaulieu's infringement from the documents presented at trial. (*Id.*)

Just as it had during the liability phase, the jury answered each interrogatory in Virtual's favor. It found that Beaulieu's infringement was willful; it identified seventy-two documents in the record that evidenced dozens of instances of infringement; it stated that thirteen of the infringements were eligible for statutory damages; and it awarded the highest maximum penalty permitted by law. (*Id.*) In total, the jury awarded Virtual $1,950,000 in damages due to Beaulieu's willful infringement. (*Id.* at Page ID # 3339.)

## F.   The district court denied Beaulieu's Rule 50 motion and issued a permanent injunction that Beaulieu no longer challenges.

Following the jury's verdict and a hearing on the injunction Virtual requested, Beaulieu filed a motion for judgment as a matter

of law. (Def.'s Brief in Support of Rule 50 Motion, R.E. 154 at Page ID # 5101–13.) It sought to totally vacate the jury's damages award, or in the alternative to decrease it to a minimal amount. (*Id.*)

In December 2013, the district court issued a Memorandum Opinion in which it denied Beaulieu's motion, granted an injunction, and denied a request Virtual made for attorneys' fees. (Memorandum Opinion on Post-Trial Motions, R.E. 166 at Page ID # 5661–82.) Under the terms of the injunction, Beaulieu had to notify its authorized retailers about the verdict and ask that they remove infringing items from their stores. (*Id.* at Page ID # 5671–76; Injunction Order, R.E. 168 at Page ID # 5685–86.)

Following the district court's ruling, Beaulieu filed a motion to stay the injunction pending appeal (Def.'s Rule 62 Motion, R.E. 169 at Page ID # 5687–91). But the district court was unconvinced of Beaulieu's position—the facts of the case warranted an injunction that continued during an appeal. (Order on Rule 62 Motion, R.E. 178 at Page ID # 5834–38.) A short time later, Beaulieu asked this Court for the same relief—a stay of the district court's injunction pending the appeal—though this time under Fed. R. App. 8. The parties once again briefed the issue, and the Court came to the

same conclusion as the district court. Beaulieu failed to establish a likelihood of success or the existence of irreparable harm, among other things, so the injunction should continue.

Beaulieu has since withdrawn its challenge of the injunction, and now focuses its appeal solely upon Virtual's damages award.

## Summary of Argument

After two and half years of litigation, Beaulieu has finally disposed of its cloak of blamelessness. The jury's findings of fact are unequivocal and Beaulieu challenges few of them. Beaulieu infringed upon dozen of Virtual's copyrighted works by using them in violation of the parties' license agreement. It did this intentionally with full knowledge that its actions were illegal. Its counterclaim against Virtual for breach of an alleged, undocumented settlement agreement was in fact without merit, as were many of the affirmative defenses it tried to prove at trial. In short, given the limited scope of its appeal, Beaulieu has now accepted that it willfully, directly, and contributorily infringed upon Virtual's copyrights in violation of federal law.

Beaulieu's acceptance of guilt, however, apparently does not include with it an acceptance of responsibility. For Beaulieu now argues that despite the resounding victory, Virtual deserves either

none of the damages the jury awarded, or only a small fraction of them. The stacks of documents and hours of testimony the jury received is just not sufficient, Beaulieu argues, to support any award of statutory damages, let alone one so large.

But in advancing these positions, Beaulieu fails to account for either the great weight of the evidence in the record or the tremendous burden it bears to show a total lack of proof supporting the jury. The jury identified some seventy-two instances of infringement on its verdict form, dozens of which Virtual observed years after it registered its copyrights. Beaulieu has not refuted that evidence as legally insufficient, and in fact, it has not even contemplated most of it.

Instead, Beaulieu wants the Court to reverse the jury's verdict by doing what appellate courts repeatedly refuse to do—speculate about how the jury arrived at its conclusion. The jury did not say which thirteen images it chose to award damages for, notwithstanding the red circle Beaulieu drew on the verdict form after the fact. Instead, it did what it was asked to do—it identified all the instances of Beaulieu's willful infringement it found in the record, and stated how many of those were eligible for statutory damages. To focus upon what is not in or implied by the verdict form as Beau-

lieu suggests would require guesswork of the sort the Court cannot employ.

Likewise, in arguing for a drastic reduction in Virtual's jury award, Beaulieu sets itself against the clear legal standards acknowledged by this and other Circuit Courts of Appeal. Though Beaulieu persists in arguing that tort law should apply to copyright damages, numerous courts in similar cases have emphatically ruled to the contrary. The limitations courts place upon punitive damages in tort cases simply do not and cannot apply to statutory damages in copyright cases.

Instead, courts view juries' awards of statutory damages with "extraordinary deference." Congress set specific limits on these awards, and as long as juries act within those bounds, they have almost unfettered discretion. The jury in this case did act within Congressional bounds, and the district court appropriately left the verdict intact.

Though the district court's decision to let the jury's verdict stand was in line with well-established precedent, its refusal to award Virtual any portion of its attorneys' fees or expenses was puzzling. The court below acknowledged binding precedent that made these awards the norm in all but exceptional cases. But, be-

cause it believed Beaulieu's defenses fell short of being frivolous, and because it believed the jury's award was substantial, the district court denied Virtual compensation for its fees.

This is, of course, contrary to the traditional approach in this and other Circuits. When a plaintiff earns a one-sided victory such as Virtual, and does so while proving that the infringer acted willfully, courts usually award attorneys' fees. This not only comports with the function of and policy behind copyright law, but also encourages others in Virtual's position to vindicate their intellectual property rights against large companies like Beaulieu. In this case, the district court considered neither Beaulieu's blameworthiness nor the tenor of the jury's award when deciding to make Virtual the exception to the rule.

The Court should therefore keep the jury's sound and thorough verdict intact, and reverse the district court's refusal to award Virtual attorneys' fees. This is dictated by the great weight of the evidence, the applicable standards of review, and well-established case law about copyright damages.

## Argument

**A. Beaulieu cannot satisfy its burden under Rule 50 to prove the total absence of evidence upon which a reasonable juror could have ruled in Virtual's favor.**

### 1. A court may not replace its judgment for the jury's or reweigh the evidence, and may reverse a verdict only where there is no evidence supporting it.

Jury verdicts are not subject to reversal simply because a different result may better conform to the facts, or because a judge disagrees with a jury's findings. Under this unique brand of deference, a court must "indulge all presumptions in favor of the validity of the jury's verdict," just as it must "refrain from interfering with a jury's verdict unless it is clear that the jury reached a seriously erroneous result." *Baker v. Windsor Republic Doors*, 414 Fed. Appx. 764, 776 (6th Cir. 2011) (noting that this standard of review governing Rule 50 motions on appeal is "identical to that used by the district court").

Given the sanctity of a jury's decision, the burden on a party trying to overturn a verdict is "extreme." *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1009 (8th Cir. 2008) (noting that "[a] jury verdict is entitled to extreme deference"). In considering a motion under Rule 50, a court cannot weigh evidence, substitute its judgment for the jury's, or inquire into witnesses' credibil-

ity. *Balsley v. LFP, Inc.*, 691 F.3d 747, 757 (6th Cir. 2012), cert. denied, 133 S. Ct. 944 (U.S. 2013). *See Tcp Indus. v. Uniroyal, Inc.*, 661 F.2d 542, 546 (6th Cir. 1981) (reasoning that a court cannot "set aside a jury verdict . . . because judges feel that other results are more reasonable"). Rather, the only inquiry a court can make is one into the mere existence of evidence. In other words, "[j]udgment as a matter of law is appropriate only when there is a complete absence of fact to support the verdict, so that no reasonable juror could have found for the nonmoving party." *Whitesell Corp. v. Whirlpool Corp.,* 496 Fed. Appx. 551, 555 (6th Cir. 2012).

But even to get to that point in its analysis, a court must view the evidence in a way that disfavors relief under Rule 50:

> Judgment as a matter of law may only be granted if, when viewing the evidence in a light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences, there is no genuine issue of material fact for the jury, and reasonable minds could come to but one conclusion in favor of the moving party.

*Balsley*, 691 F.3d at 757.

The deference afforded to jury verdicts does not end there. In addition to proving that no reasonable juror could have sided with the victor, a Rule 50 movant must overcome a legal presumption that "the jury has followed the [district court's] instructions as giv-

en." *Clarksville-Montgomery County School System v. United States Gypsum Co.*, 925 F.2d 993, 1003 (6th Cir. 1991) (stating this rule in a products liability case). So a movant's argument cannot hinge upon conjecture about a jury's misapprehension of clear instructions. As one Circuit Court of Appeals put it, "mere speculation that a jury verdict may have been based on the jury's own misunderstanding of the law, even though properly instructed, is an insufficient basis on which to upset a jury verdict." *Craig Outdoor Adver., Inc.*, 528 F.3d at 1023.

And despite Beaulieu's argument to the contrary, this presumption applies in civil cases just as it does criminal. *See Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000) (noting in a wrongful death case that "[f]ederal courts generally presume the jury will follow the instructions correctly as given"); *Dunaway v. Moore*, Nos. 94-6068 & 94-6125, 1996 U.S. App. LEXIS 8257, *12 (6th Cir. Mar. 7, 1996) (affirming a jury's damages calculation in an employment suit and noting that "[i]n the absence of evidence to the contrary, we must presume the jury followed the instructions given"); *Little v. Green*, 428 F.2d 1061, 1069 (5th Cir. 1970) cert. denied 400 U.S. 964 (1971) (affirming a jury verdict in a personal injury case and acknowledging that the pre-

sumption that the jury followed its instructions "cuts off specula-tion that the jury may have been confused" by a lawyer's oratory).

Similarly, a movant cannot succeed under Rule 50 if its dispute with a verdict is premised upon conjecture about the jury's motive or intent. It is indeed well-accepted that "a verdict will not be upset on the basis of speculation" about its calculation. *Howard D. Jury, Inc. v. R & G Sloane Mfg. Co.*, 666 F.2d 1348, 1351 (10th Cir. 1981). *See Boyle v. Pool Offshore Co., Div. of Enserch Corp.*, 893 F.2d 713, 718 (5th Cir. 1990) (recognizing that "[i]t is fundamental that a court will not upset a jury verdict on the basis of speculation about what might have motivated the members of the jury"); *Floyd v. Laws*, 929 F.2d 1390, 1399 (9th Cir. 1991) (reasoning that "it is dif-ficult for a reviewing court to divine what the intent of the jury might have been," and noting that it had no precedent that would "permit [it] to indulge in speculation as to the jury's motives"). The fact that even "direct testimony from jurors is incompetent to prove such matters" has led courts to opine bluntly that "guesswork as to the manner in which the jurors arrived at [a] verdict" cannot serve as the basis of a verdict's invalidation. *Howard*, 666 F.2d at 1351–52 (rejecting a party's argument that "would have [the court] pre-

21

sume or surmise confusion in the minds of the jury at the time the verdicts were rendered").

### 2. Beaulieu has not shown the total absence of evidence that could support the jury's verdict.

Beaulieu's recitation of the basic requirements for statutory damages under copyright law is correct. A plaintiff must show that it registered its copyrights before a defendant commenced infringing particular works. 17 U.S.C. § 412. And indeed, that is exactly how the district court instructed the jury in this case:

> Virtual Studios must have registered its room scene images prior to Beaulieu's first infringement of those images, or within three months of the first publication of the work, in order to be eligible to collect statutory damages. The effective date of the copyright registration is identified on the face of the registration. If, and only if, Virtual Studios proved by a preponderance of the evidence that its registration was timely should you go on to consider statutory damages.

(Trial Transcript (Day 6), R.E. 131 at Page ID # 4262–63.)

To that end, Virtual presented a number of different types of proof about Beaulieu's infringement. The jury heard how Virtual provided Beaulieu with over 100 images during the course of their relationship, and that Virtual observed at least forty-five of those 100-plus images being used impermissibly. (Trial Transcript (Day

5), R.E. 130 at Page ID # 4069.) The jury listened to testimony about Beaulieu impermissibly using twelve images on its website in 2007. (Trial Transcript (Days 1, 2, and 5), R.E. 126, 127, and 130 at Page ID # 3485–89, 3674–76, 4077.) And the jury learned about Virtual later observing scores of images on Beaulieu's in-store displays, some after the end of 2008 (Trial Transcript (Day 5), R.E. 130 at Page ID # 4064–75; Retail Photographs, Pl.'s Ex. 8, 14, 15, App. Vol. III at 2497–2506, 2584–89, 2590–2673), and dozens more in 2012. (Trial Transcript (Day 1), R.E. 126 at Page ID # 3496–3524; Retail Photographs, Pl.'s Ex. 9, 10, 12, 13, App. Vol. III at 2507–28, 2529–59, 2570–80, 2581–83.)

Next, Virtual presented proof that, despite its attempts to elicit additional information from Beaulieu about its use of these images, it was unable to do so. In response to questions about the images it used, and about how and when it used them, Beaulieu claimed ignorance. It "did not track" its use of Virtual's images, and could not "state how or when each of the room scene images . . . was used." (Beaulieu's Supplemental Discovery Responses, Pl.'s Ex. 62, App. Vol. III at 2674–78.) So the *only* evidence of infringing use in the record was that proffered by Virtual. In other words, Beaulieu offered no testimony regarding its use of the specific room scenes Vir-

tual identified as infringing and did not rebut Virtual's proof on the issue.

Now Beaulieu is trying to use its claimed ignorance to its advantage. It should be impossible, Beaulieu claims, for any victim of infringement to recover statutory damages where a willful infringer had access to the victim's copyrighted works before registration but cannot recall when it first started using them. Even though the infringer may be the only party in a position to know that information, the plaintiff is simply without recourse. The only evidence the plaintiff can find may be of post-registration use, but that is insufficient—it must somehow marshal concrete evidence of an infringer's first infringement even though the infringer does not keep track of such information.

This of course fundamentally conflicts with the function of circumstantial evidence and the preponderance-of-the-evidence standard of proof. As the district court correctly instructed, circumstantial evidence—"a chain of circumstances that indirectly proves a fact"—deserves the same weight as direct evidence. (Trial Transcript (Day 4), R.E. 129 at Page ID # 3955.) If the jury believed that the direct and circumstantial evidence at trial made it more likely than not that thirteen of Beaulieu's seventy-two infringements be-

gan after the works were registered, then it was wholly within its province to rule in Virtual's favor.

In this regard, Beaulieu's burden under Rule 50 is especially significant. It is Beaulieu's task to prove "a complete absence of fact to support the verdict, so that no reasonable juror could have found for" Virtual. *Whitesell Corp.,* 496 Fed. Appx. at 555. In this case, Beaulieu has not only failed at this task; it has not even attempted it. Nowhere in its brief has it argued or cited evidence in support of the position that the record is entirely devoid of any proof that could support the jury's finding that thirteen images were eligible for statutory damages. The jury listed seventy-two documents in its verdict, all of which contain one or more room scene images. But Beaulieu has simply ignored sixty of these documents, dozens of which contain evidence of infringement that Virtual observed in 2012.

This failure may be in part due to Beaulieu's focus upon the internet screenshots and the reasons why it believes the jury meant to award statutory damages only for those infringements. Without any indication by the jury that this was the case, however, it is just as likely (and, because the jury is presumed to have followed its instructions, more so) that the images in question came from the oth-

er sixty bates numbers on the verdict form.[5] And Beaulieu has not addressed this—it has not produced evidence showing that those sixty documents lack thirteen images that could be eligible for statutory damages.

Beaulieu has therefore not carried its burden under Rule 50. It has to show "a total absence of evidence" from which a reasonable juror could find for Virtual, and it has not done so.

### 3.  There is no evidence that the jury awarded damages solely or even partially on the basis of photos from Beaulieu's website.

When the jury issued its verdict, its ruling was clear, unequivocal, and completely responsive to the questions before it. The jury was asked to list by exhibit number the copyrighted room scenes that Beaulieu infringed. (Jury Verdict Form (Damages), R.E. 123 at Page ID # 3338–40.) And it did so—it listed seventy-two bates labeled pages among eleven different trial exhibits. Though the jury did not make any notations about the listed bates pages, the evi-

_____

[5] The jury listed twelve bates numbers from Plaintiff's Exhibits 1–3, and sixty from Plaintiff's Exhibits 8–15. (Jury Verdict Form (Damages), R.E. 123 at Page ID # 3340.) Plaintiff's Exhibits 1, 2, and 3 contain internet screenshots, and Plaintiff's Exhibits 8–15 contain photographs from retail stores. (Internet Screenshots, Pl.'s Ex. 1–3, App. Vol. II at 454–667; Retail Photographs, Pl.'s Ex. 8–15, App. Vol. III at 2497–2673.)

dence it referenced is clear. Sixty of the pages listed are photographs of Virtual's room scene images in retail stores, and twelve are internet screenshots of Virtual's room scenes from Beaulieu's website.

In response to the verdict form's second and third questions about Beaulieu's mental state when it infringed Virtual's copyrights, the jury's finding was equally clear. The jury checked a line next to the word "Yes" when asked if Beaulieu's infringement was willful, and checked a line next to the word "No" when asked if Beaulieu's conduct was innocent. (*Id.* at Page ID # 3338.)

The fourth, fifth, and sixth questions on the verdict form all related to statutory damages, and, once again, the jury's answers were directly responsive. When asked to "indicate the number of 'works' . . . the defendant infringed within the relevant time period," the jury wrote the number "13." (*Id.* at Page ID # 3339.) When asked to indicate "the amount of statutory damages" it was "awarding for each work," it wrote the figure "$150,000." (*Id.*) And when asked to multiply these two numbers together to reach a final damages award, it did so: "$1,950,000.00." (*Id.*)

Despite the clarity of this verdict, Beaulieu contends that the jury's conclusion conflicts with the district court's clear instruc-

tions. This argument is premised upon an assumption that the jury's award was based solely on images from Beaulieu's website. The award of statutory damages was based on the internet pictures, Beaulieu argues, but all of these images were apparently registered after Beaulieu started using them illegally. Because of this, the jury was wrong in awarding statutory damages.

Of course, the jury in no way indicated on its verdict form that the thirteen images for which it was awarding damages came only from the twelve internet screenshots in question. It did not list those twelve bates numbers in response to the question about statutory damages. It did not draw a circle around or highlight them to indicate any special significance apart from the other sixty bates numbers on the page.[6] It did not assign labels, such as "Timely Filed," to any bates numbers anywhere on the verdict form. And it did not note in any way that only the internet-related documents contained the thirteen images ripe for statutory damages.

---

[6] Notwithstanding the large, red circle around some of the bates numbers on the version of the verdict form Beaulieu included in the Appendix (App. Vol. I at 37), the jury did not make any such notations. (Jury Verdict Form (Damages), R.E. 123 at Page ID # 3340.) Rather, Beaulieu drew the circle on the form to support its argument.

But Beaulieu persists in its position nonetheless. The fact that the jury picked thirteen images from the twelve internet screenshots is evident, it argues, because the twelve screenshots are listed together on the form. And since they were listed together, it is "clear" that the jury "drew a dichotomy between display images and website images, and found only the latter to warrant statutory damages." (Beaulieu's Corrected Brief at 23, App. Court Doc. No. 20 at 30.)

Notwithstanding the absence of any evidence that the jury "found only [the internet images] to warrant statutory damages," the questions Beaulieu's conclusion begs are nearly endless. How does the fact that the twelve internet screenshots are listed together—in the same manner Virtual presented them at trial—indicate anything about the jury's motive or method of calculation? If the mode of the jury's placement of bates numbers on the verdict form is of some import, why did the jury not say so? And even then, why not impart significance upon the jury's grouping of the retail display photographs, which are listed first on the verdict form? Is it not equally possible that the jury's decision to list the internet shots after the retail shots indicates its intent to cull thirteen works from the pool of retail infringements? Upon what legal basis

could the jury find that only the website images warranted statutory damages given the absence of any instruction to this effect? Is Beaulieu's conclusion any more likely than the possibility that the jury placed the bates numbers of the internet images in the location it did because it simply ran out of room on the page?

That these questions have no concrete answer is due simply to the nature of Beaulieu's argument—it is founded purely upon speculation. There is no way to discern from the face of the jury's verdict the identity of the thirteen specific images it found ripe for statutory damages. The jury simply performed the task asked of it—it listed the exhibit and bates numbers of documents that contained infringing images. To make any further assumptions about the jury's method is pure guesswork, and thus cannot serve as the basis for upending a verdict under Rule 50.

### 4. Only twelve of Virtual's images were on Beaulieu's website, so the jury's award could not have been based only on the internet screenshots.

Given the testimony at trial, it is surprising that Beaulieu's argument hinges upon its certainty that the jury found thirteen infringing images among the internet screenshots. The jury heard testimony from Mr. Sucher, Virtual's primary witness, that he identified about eighteen total room scenes on Beaulieu's website.

(Trial Transcript (Day1), R.E. 126 at Page ID # 3485–86.) But of those eighteen total room scenes, Mr. Sucher testified multiple times that only twelve belonged to Virtual. (*Id.*; Trial Transcript (Day 5), R.E. 130 at Page ID # 4077.) This is why Virtual invoiced Beaulieu for twelve improperly-used room scenes during the companies' failed 2008 and 2009 negotiations. (Trial Transcript (Day 2), R.E. 127 at Page ID # 3674–76.) Likewise, when Virtual's attorney made his closing argument during the damages phase of the trial, he reminded the jury about the twelve copyrighted images Virtual found on Beaulieu's website. (Trial Transcript (Day 6), R.E. 131 at Page ID # 4241.)

So the jury had ample evidence from which it could conclude that twelve images, not thirteen, were infringed by Beaulieu online. And since that is the case, Beaulieu's speculative argument that the jury culled all thirteen eligible images from the internet-related documents cannot succeed.

The Court should also note that the twelve internet screen-shots listed among the seventy-two bates pages on the jury's verdict form contain twelve copyrighted Virtual images, not eleven as Beaulieu argues. One image Beaulieu identifies as not belonging to Virtual—what Beaulieu calls the "chair and table" image (Def.'s

Corrected Brief at 31, App. Court Doc. 23 at 38)—was in fact among Virtual's copyrights. (Copyright Photos, Pl.'s Ex. 27 at VS-BEAU 6841, App. Vol. II at 1647; Internet Screenshots, Pl.'s Ex. 1 at VS-BEAU 0080, App. Vol. II at 503.) With the other eleven images Beaulieu admits were copyrighted, that makes twelve images on the website, just as Virtual argued to the jury during the trial.[7]

But, again, even if that was not the case, it would not void the jury's verdict—there are sixty other images listed on the jury form whose copyrights and eligibility for statutory damages Beaulieu has not attacked.

### 5. Beaulieu cannot overcome the presumption that the jury properly followed the Court's instructions.

For Beaulieu to be correct, it would have to assume that the jury did not follow the Court's instructions. Because if the infringing internet images are not eligible for statutory damages as Beau-

---

[7] The other image Beaulieu identifies as not being copyrighted was indeed one of the few Beaulieu used online that did not come from Virtual. And in fact, the jury observed testimony touching on that very image from which they could have concluded as much. (Trial Transcript (Day 5), R.E. 130 at Page ID # 4090–91.) The fact that it appears on one of the pages that the jury identified on its verdict form is not significant because it is not the only image on the page—it is located alongside two other images, both of which belong to Virtual.

lieu asserts, then the jury could have chosen those images only by completely disregarding the district court's clear instruction about statutory damages. (Trial Transcript (Day 6), R.E. 131 at Page ID # 4262–63.)

The Court read that instruction aloud before the jury's deliberations began. (*Id.*) The jury had access to all Virtual's copyright registrations (Copyright Registrations, Def.'s Ex. 9–19, App. Vol. I at 40–441), as well as all the images Virtual deposited with the Copyright Office. (Copyright Photos, Pl.'s Ex. 21–31, App. Vol. II at 668–2362.) They had copies of all the exhibits containing evidence of Beaulieu's infringement (Internet Screenshots, Pl.'s Ex. 1–3, App. Vol. II at 554–667; Retail Photographs, Pl.'s Ex. 8–15, App. Vol. III at 2497–2673), and they heard testimony about the dates Virtual saw impermissible images on Beaulieu's website. (Trial Transcript (Day 1), R.E. 126 at Page ID # 3486–89.) In short, the members of the jury had everything before them to prevent the mistake of awarding statutory damages on the basis of an untimely image.

Despite this, the Court is asked to override the presumption of the jury's aptitude. But not because of any direct evidence of disobedience or notes on the jury's verdict form that belie the Court's

instructions. Instead, the jury should be declared inept because Beaulieu believes the numbers listed on the jury's verdict form tacitly reveal information the jury was not asked to provide.

This type of conjecture falls far short of the burden Beaulieu has to establish the jury's clear error. The Court should therefore reject it and affirm the jury's decision just as the district court did.

## B. The jury's award of statutory damages is within the range permitted by Congress, is not grossly excessive, and does not offend due process.

### 1. Juries have almost unfettered discretion to set statutory damages awards anywhere within the range permitted by law.

Under federal copyright law, plaintiffs have the ability to recover a number of types of damages, all of which serve different functions. They may seek their "actual" damages, which could include lost profits, lost royalties, or other compensation for the value of a work. *Cornerstone Home Builders, Inc. v. McAllister*, 303 F. Supp. 2d 1317, 1321 (M.D. Fla. 2004) (affirming an award of lost profits as part of actual damages under copyright law); *Davis v. Gap, Inc.*, 246 F.3d 152, 161–72 (2d Cir. 2001) (reasoning that copyright plaintiffs may recover reasonable royalties as part of actual damages award); *Mary Ellen Enters. v. Camex, Inc.*, 68 F.3d 1065, 1070 (8th Cir. 1995) (affirming award compensating plaintiff for

"diminished future value" of works).  They may seek to disgorge an infringer's profits by putting on proof of the defendant's gross revenues "reasonably related" to the infringing activity. *Balsley*, 691 F.3d at 769–70. Or they may seek "statutory damages," which are per-infringement awards that must fall between legislatively-set bounds—from $200 to $30,000 per violation if the defendant's conduct was innocent or not willful, and from $750 to $150,000 per violation if the defendant's conduct was willful. 17 U.S.C. § 504(c).

This last category of damages is unique in a number of ways. Of course it confines juries' discretion by setting minimum and maximum levels of awards, which neither of the other categories of damages does. But it is also distinct in that it serves both public and private purposes:

> [Since a statutory damages award] "is imposed as a punishment for the violation of a public law, the Legislature may adjust its amount to the public wrong rather than the private injury, just as if it were going to the state." The protection of copyrights is a vindication of the public interest, and statutory damages are "by definition a substitute for [a private litigant's] unproven or unprovable [sic] actual damages."

*Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 909–10 (8th Cir. 2012), cert. denied, 133 S. Ct. 1584 (U.S. 2013) (citing in part *St. Louis, I. M. & S. R. Co. v. Williams*, 251 U.S. 63, 66 (1919)).

Because of this public function, a statutory damages award is not limited to the "restitution of profit and reparation for injury" of the plaintiff. *F. W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 233 (1952). Instead, it gives "wide discretion" to a judge or jury "to discourage wrongful conduct" of other potential infringers. *Id.* at 232–33. This purpose therefore transcends the limits that may otherwise constrain a court when an infringer's conduct was "uninjurious and unprofitable." *Id.* at 233. Even in those cases, "if it deems it just, [a court may] impose a liability within statutory limits to sanction and vindicate the statutory policy." *Id. See also Douglas v. Cunningham*, 294 U.S. 207, 209–10 (1935) (noting that before the allowance of statutory damages, successful plaintiffs "were able to recover only nominal damages, in spite of the fact that preparation and trial of the case imposed substantial expense and inconvenience," and that "[t]he ineffectiveness of the remedy encouraged wilful [sic] and deliberate infringement").

Likewise, the factors juries may weigh in awarding statutory damages cover a broad range of considerations relevant to the function of copyright law. *See King Records, Inc. v. Bennett*, 438 F. Supp. 2d 812, 853 (M.D. Tenn. 2006) (noting that relevant factors include "the expenses saved and profits reaped by the defendants in

36

connection with the infringements, the revenues lost by the plaintiffs as a result of the defendants' conduct, . . . the infringers' state of mind," and "'the goal of discouraging wrongful conduct'"); *Manno v. Tenn. Prod. Ctr.*, Inc., 657 F. Supp. 2d 425, 433 (S.D.N.Y. 2009) (citing additional factors as relevant, such as "the value of the copyright," the "deterrent effect on others besides the defendant," and "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced").

Because of these broad aims, a jury's discretion "in setting its statutory damage award within the prescribed [monetary] range" in the statute is "almost unfettered." *Broadcast Music v. Star Amusements*, 44 F.3d 485, 489 (7th Cir. 1995) (upholding a district court's "maximum award" under the copyright statute). *See Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 992–93 (9th Cir. 2009) (recognizing that "[t]he [jury] has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima" in the statute).

And when courts use phrases like "unfettered," they are not employing hyperbole. So great is the jury's freedom within the statutory boundaries that the United States Supreme Court has

gone so far as to say that even the "abuse of discretion" standard is too low to protect a statutory damages award:

> [T]he employment of the statutory yardstick, within set limits, is committed solely to the court which hears the case, and this fact takes the matter out of the ordinary rule with respect to abuse of discretion.

*Douglas*, 294 U.S. at 208–09, 210 (making this ruling where "[t]he sole question presented [was] whether consistently with [copyright law] an appellate court may review the action of a trial judge in assessing an amount in lieu of actual damages, where the amount awarded is within the [statutory damages] limits imposed by the section").

Though the Supreme Court in *Douglas* did not name this level of review, this Court recently did—"extraordinary deference." *Zomba Enters. v. Panorama Records, Inc.*, 491 F.3d 574, 587 (6th Cir. 2007), cert. denied, 553 U.S. 1032 (U.S. 2008) (citing *Douglas* and recognizing that this level of review was "even more [deferential] than in cases applying abuse-of-discretion review").

## 2. The due process standards that govern punitive damages in tort cases are inapplicable to statutory damages in copyright litigation.

Given the "extraordinarily" difficult task of altering statutory damages awards within the proper limits, a number of infringers

have simply tried to change the rules. They have asserted—just like Beaulieu in its brief—that due process limits applicable to large punitive awards in tort cases should inform judicial review of copyright damages.

But multiple courts have rejected this argument outright, and have continued to apply the "extraordinarily deferential" level of review contemplated by *Douglas*. For example, in *Capitol Records, Inc. v. Thomas-Rasset*, a copyright infringer argued that the punitive-damages "guideposts" the Supreme Court announced in *State Farm Mut. Auto. Ins. Co. v. Campbell* and *BMW. of N. Am., Inc. v. Gore* should dictate the reduction of a plaintiff's statutory award. *Capitol Records, Inc.*, 692 F.3d at 907. Using those "guideposts," the court would consider the "reprehensibility" of the defendant's conduct, the "disparity" between the "punitive" and actual damages, and the difference between the "punitive" award and "civil penalties" in "comparable cases." *Id*.

The Eighth Circuit Court of Appeals disagreed with this position without equivocation. It noted simply that the substantive differences between punitive damages and statutory damages made use of the guideposts completely illogical:

> The guideposts themselves . . . would be nonsensical if applied to statutory damages. It makes no sense to consider

> the disparity between "actual harm" and an award of statutory damages when statutory damages are designed precisely for instances where actual harm is difficult or impossible to calculate. Nor could a reviewing court consider the difference between an award of statutory damages and the "civil penalties authorized," because statutory damages *are* the civil penalties authorized.

*Id.* at 907–08 (emphasis in original) (noting further that due process notice concerns in excessive punitive damages contexts—that the person must have "fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose"—is absent with "statutory damages, because those damages are identified and constrained by the authorizing statute").

Likewise, to subject a statutory damages award to an outcome-determinative "proportionality" analysis akin to punitive damages was absurd. The infringer in *Capitol Records* decried the jury's verdict as "wholly disproportionate to the offense" because it was not "based on any evidence of harm caused by her specific infringement." *Id.* at 909. The district court agreed, concluding in its ruling that "statutory damages must still bear *some* relation to actual damages." *Id.* (emphasis in original). But the court of appeals again pointed out that statutory damages are different. Citing Supreme Court precedent, it noted simply that its "inquiry [does not] call for

a comparison of an award of statutory damages to actual damages caused by the violation." *Id.* (citing *St. Louis, I. M. & S. R. Co.*, 251 U.S. at 66).

This Court faced a similar situation in *Zomba Enters. v. Panorama Records*, when an infringer challenged a statutory damages award on due process grounds. The infringer cited punitive-damages guideposts from *Gore* and *Campbell* to argue that the jury's verdict, which was forty-four times higher than the plaintiff's actual damages, was excessive. *Zomba*, 491 F.3d at 586, 588 n. 11.

After reviewing the guideposts and precedent about statutory damages, the *Zomba* court did what the Eighth Circuit would later do in *Capitol Records*. It declined to apply *Gore* and *Campbell* in the copyright context, it reaffirmed the *Douglas* court's "extraordinarily deferential" standard of review, and affirmed the plaintiff's statutory damages award. *Id.* at 586–88. And like the *Capitol Records* court, it too contemplated the difficulty infringers faced in arguing for the single-digit punitive-to-compensatory-damages ratios from *Gore* and *Campbell*. After all, in one of the long-standing cases on this topic—*St. Louis, I. M. & S. R. Co. v. Williams*—the Supreme Court affirmed a statutory damages award that was 113 times higher than the plaintiff's compensatory damages. *Id.* at

587–88. *See Sony BMG Music Entm't v. Tenenbaum*, 719 F.3d 67, 70–71 (1st Cir. 2013) (reasoning that the punitive damages guideposts from *Gore* and *Campbell* do not apply to statutory damages awards in copyright cases, and holding that a $650,000 statutory award did not violate due process even though the plaintiff's actual damages may have only been $450).

### 3.   Beaulieu's reliance on punitive-damages guideposts and proportionality is misplaced, and it has not overcome the extraordinary deference due the jury.

Though multiple courts have rejected infringers' pleas to apply the *Gore* and *Campbell* guideposts to copyright cases, Beaulieu presents the same failed argument here. It references *St. Louis, I. M. & S. R. Co. v. Williams*, but omits the fact that the *Williams* Court affirmed statutory damages 113 times bigger than the plaintiff's actual loss. It argues that this Court should reverse its decision in *Zomba*, but it fails to discuss the inherent incompatibilities between the punitive guideposts and the function of statutory damages. And it repeatedly highlights the disparity of the jury's award compared to (Beaulieu's calculation of) Virtual's "actual" damages,[8]

---

[8] Because Virtual was not permitted to present proof of actual damages at trial, Beaulieu's calculation of these damages is not based upon any theory of recovery Virtual presented to the jury. There is therefore no way for the Court to retroactively speculate

but fails to cite the numerous cases that flatly rejected the very premise of its argument.

Notwithstanding Beaulieu's argument to the contrary, the Court's task is not to look for any specific statutory-to-actual-damages ratios or bright-line limits. Rather, it is to simply inquire whether the jury overstepped the "almost unfettered discretion" it had under copyright law to award damages within the bounds set by Congress.

In this case, the answer to that inquiry is manifest with even a cursory review of the evidence the jury observed and the verdict it issued. The jury heard days of testimony about Beaulieu's knowledge of the scope of the parties' license. It learned of the explicit notices Beaulieu received from Virtual about its infringing activity, and about Beaulieu's attempt to pacify Virtual into inaction. It saw documentary evidence showing how even after being warned, Beaulieu used Virtual's property in open defiance of Virtu-

---

about what proof may or may not have been offered had Virtual been allowed to pursue those damages, or the award the jury might have made. The district court acknowledged this in its Memorandum Opinion when it refused to "take Beaulieu's word for it" about Virtual's actual damages. (Memorandum Opinion on Post-Trial Motions, R.E. 166 at Page ID # 5670.)

al's copyrights. And it heard Beaulieu's repeated denials of wrong-doing despite all the evidence to the contrary.

The jury then took decisive and just action. It rejected Beaulieu's defenses and counterclaim, and found that Virtual proved every element essential for victory. It answered over a dozen special interrogatories in Virtual's favor, and found that Beaulieu directly, contributorily, and willfully infringed upon Virtual's copyrights.

Then, after being instructed about all the different factors it could consider in awarding statutory damages—Virtual's lost profits, Beaulieu's saved expenses, Beaulieu's profits, the scope of the infringement, the need to deter others, Beaulieu's financial condition, Beaulieu's intent, the need for punishment, etc. (Trial Transcript (Day 6), R.E. 131 at Page ID # 4263)—it did exactly what it was entitled to do. It awarded Virtual $150,000 per eligible infringement, a number within the statutory limits.

Given all the evidence the jury was free to consider in setting the level of damages, and the fact that the award was not outside the statutory limits, the propriety of the verdict is clear. The jury acted completely within its province when it awarded the maxi-

44

mum damages allowed by law.[9] Without more than inapplicable arguments about the disparity of the statutory-to-actual-damages ratio and the absence of "reprehensibility" under *Campbell* and *Gore*, Beaulieu has not come close to overcoming its extraordinary burden.

**C.  The district court departed from black-letter law when it denied Virtual's attorneys' fees request, and therefore abused its discretion.**

**1.  A party that prevails on its copyright claim is usually entitled recover its costs and reasonable attorneys' fees.**

Under federal copyright law, a prevailing party in an infringement action may recover its costs and attorneys' fees:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party . . . . Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

---

[9] The district court acknowledged this as well, noting that the jury's award is not "severe or oppressive" given Beaulieu's international prominence in the carpet industry and multi-million dollar yearly sales, and acknowledging that the verdict was meant to deter infringement by a company of Beaulieu's size and stature. (Memorandum Opinion on Post-Trial Motions, R.E. 166 at Page ID # 5670–71.)

An award under this provision is within the discretion of a district court, and is therefore reversible on appeal only if that court abused its discretion. *Balsley*, 691 F.3d at 761, 771. However, a district court's decision under this statute must still conform to appropriate legal principles. In other words, it must be "faithful to the purposes of the Copyright Act." *Id.* at 773. And to be faithful to those purposes, this Court has recognized on a number of occasions that district courts should often grant relief under this statute— "[t]he grant of fees and costs 'is the rule rather than the exception'" and "should be awarded routinely" to a prevailing party. *Id.* at 773 (affirming a copyright plaintiff's $134,000 fee award where that was the portion of the total fee "attributable to litigating" the plaintiff's copyright claim). *See Bridgeport Music, Inc. v. WB Music Corp. (WB Music II)*, 520 F.3d 588, 592 (6th Cir. 2008) (recognizing the same rule).

To "prevail" in a copyright case so as to be entitled to these fees, a plaintiff need not "prevail 'in full.'" *Thoroughbred Software Int'l, Inc. v. Dice Corp.*, 488 F.3d 352, 362 (6th Cir. 2007). Rather, it must "succeed on a significant issue in the litigation that achieves some of the benefits [it] sought in bringing suit" under the copyright law. *Id.* (disregarding the plaintiff's voluntarily dismissed

state-law claims as irrelevant to an attorneys' fees award for a successful copyright suit). In essence, the plaintiff must have succeeded in some material way and "must not have obtained a 'purely technical or de minimis' success." *Id. Cf. DiLaura v. Twp. of Ann Arbor*, 471 F.3d 666, 672 (6th Cir. 2006) (noting that courts "should not reduce attorney fees based upon a simple ration of successful claims to claims raised").

Once a court has determined that a plaintiff "prevailed" in its copyright claim, it must determine whether and in what amount to award attorneys' fees. This analysis entails the review of many factors. There are of course the four traditional *Fogerty* factors— "frivolousness, motivation, objective unreasonableness . . . [and] considerations of compensation and deterrence." *Balsley*, 691 F.3d at 773. Others, such as "whether the defendant made an attempt to avoid the infringement" and "whether the infringement was innocent," are relevant as well. *Disney Enters. v. Farmer*, 427 F. Supp. 2d 807, 817 (E.D. Tenn. 2006). *See Disney Enters. v. Hammond*, Civil Action 2:05-cv-742, 2006 U.S. Dist. LEXIS 3135, *7 (S.D. Ohio Jan. 27, 2006) (recognizing "willfulness" as a factor, and reasoning that "the more culpable the offender's conduct, the more likely the court will order an award of attorney's fees"). And at least a dozen

more factors—the "lodestar" factors—may help a court determine the reasonableness of a fee (though the "most critical" of these is "the degree of success obtained" by the plaintiff). *Jacobs v. Memphis Convention & Visitors Bureau*, Case 2:09-cv-02599-STA-cgc, 2012 U.S. Dist. LEXIS 137344, *30 (W.D. Tenn. Sept. 7, 2012) (citing the twelve lodestar factors as relevant to a court's determination of whether the amount of time an attorney spent on a copyright case and the rate charged for that time was "reasonable").

### 2.   Virtual is the prevailing party and is entitled to recover reasonable attorneys' fees for the work its attorneys performed in this case.

According to the jury's special verdicts, as well as the district court's injunction order, Virtual is the "prevailing party." The jury answered every single interrogatory in Virtual's favor, found that Beaulieu willfully infringed Virtual's copyrights, and awarded Virtual $1,950,000 in statutory damages. The district court affirmed the verdict, and then supplemented it with an award of injunctive relief. In other words, Virtual was successful in every facet of the copyright claim it asserted against Beaulieu.

Given this overwhelming success, Virtual should recover attorneys' fees. This is true for a number of reasons, not the least of which is the tenor of Beaulieu's illegal conduct. It knew that the

images belonged to Virtual, but used them indiscriminately. It made no effort to segregate them from others that it had on file (Trial Transcript (Day 3), R.E. 128 at Page ID # 3839–40), and before trial it never contacted any of its authorized dealers to avoid further use of those images. (Injunction Hearing Transcript, R.E. 147 at Page ID # 4449–50.) And even though it was not able to get Virtual to sign a settlement agreement or release, it countersued and claimed that the parties had settled their dispute.

This evidence not only goes to Beaulieu's motivation and failure to avoid infringement, but also implicates "considerations of . . . deterrence" that the district court should have weighed. The jury sent a clear message that Beaulieu's conduct was deserving of formal punishment as a means to deter it and others from future infringement. An award of attorneys' fees would reiterate the purpose of the jury's award and serve as an additional deterrent against similar conduct.

The district court, however, gave little weight to those facts. Rather, it essentially ignored the character of the jury's verdict. The decision on attorneys' fees did not mention, for instance, the jury's finding of intent. Though the jury received instructions that contemplated two types of infringement that fell short of willful-

ness—innocent on the one hand, and neither innocent nor willful on the other (Trial Transcript (Day 6), R.E. 131 at Page ID # 4264)—it still found that Beaulieu's illegal conduct was willful. Numerous courts have indicated that such a finding by itself warrants an award of attorneys' fees, and that it further implicates considerations of compensation and deterrence. *Broad. Music, Inc. v. H.S.I., Inc.*, Case No. C2-06-482, 2007 U.S. Dist. LEXIS 86642, *19 (S.D. Ohio Nov. 26, 2007) (awarding attorneys' fees "[b]ecause of Defendants' willful infringement of Plaintiffs' copyrights"); *Broad. Music, Inc. v. DK 547, LLC*, Civil Action 2:11-CV-10642013 U.S. Dist. LEXIS 54033, *21 (S.D. Ohio Apr. 15, 2013) (awarding an attorneys' fees award because "defendants willfully infringed plaintiffs' statutory rights despite numerous warnings" from the plaintiffs); *Getaped.com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 406 (S.D.N.Y. 2002) (noting that "[a]n award of attorney's fees is justified, inter alia, where the infringement was willful, as here"); *Controversy Music v. Down Under Pub Tyler, Inc.*, 488 F. Supp. 2d 572, 579 (E.D. Tex. 2007) (finding "no reason" to find an "exception to the Fifth Circuit's general rule that attorneys' fees are routinely awarded" where "[l]iability is undisputed and the Defendants are willful infringers"); *Jacobs*, 2012 U.S. Dist. LEXIS 137344 at *27

(finding "that the goals of compensation and deterrence would best be fostered by awarding to Plaintiff reasonable attorneys' fees" because "the jury has determined that [the defendant] acted willfully in infringing Plaintiff's copyright protections").

But in this case, the district court did not even consider this evidence in the attorneys' fees portion of its opinion. Instead, it opined that Beaulieu's defenses raised "legitimate questions" and were part of a "reasonable trial strategy." (Memorandum Opinion on Post-Trial Motions, R.E. 166 at Page ID # 5681.) Even though the jury flatly rejected all those defenses, the district court did not believe they were "frivolous." (*Id.*)

Absent from that analysis, however, is any authority for the proposition that the plausibility of an infringer's affirmative defense precludes an award of attorneys' fees. And indeed, there is recent precedent from at least one other district in Tennessee that demonstrates the opposite proposition. In that case, even though the infringer's defenses were not frivolous or objectively unreasonable, the district court did not shield it from paying attorneys' fees on account of its willful infringement. *Jacobs*, 2012 U.S. Dist. LEXIS 13744 at *21–31 (awarding attorneys' fees even though an infringer's defenses were not objectively unreasonable or frivolous,

and "reiterate[ing] that the jury's finding of willfulness is a key factor in recommending that attorneys' fees be awarded").

### 3. The attorneys' fees Virtual requests are reasonable and the Court should award them in their entirety.

Virtual's attorneys had to perform a significant amount of work over the course of eighteen months to achieve the result that they did. They had to interview many witnesses, conduct numerous depositions, and review thousands of pages of documents from a variety of sources. They had to defend against substantial dispositive and pre-trial motions, navigate Virtual through a six-day jury trial and one-day injunction hearing against one of the largest carpet companies in the world, and preserve their client's victory in the face of multiple post-trial motions. *See supra* at 9–14.

All these efforts required a great deal of time. By mid-July 2013, Virtual's attorneys spent 676.9 hours pursuing a copyright claim against Beaulieu at rates of between $180 and $325 per hour, and incurred a total fee of $152,876.[10] (Affidavit Supporting Attor-

_____

[10] Beaulieu originally objected to the reasonableness of Virtual's fees on account of the absence of itemized bills in the record to show how Virtual's attorneys spent their time. Despite the fact that Virtual's attorney's affidavit addressed the reasonableness of the fee, Virtual moved to submit itemized invoices under seal for the district court's private review. (Motion to File Docs Under Seal, R.E.

neys' Fees Motion, R.E. 133-1 at Page ID # 4301–04.)  Given the size and scope of the case, the issues involved, the potential damages at stake, the results Virtual's attorneys achieved, the fees charged in the community, and all the other factors a court should consider when determining the appropriateness of attorneys' fees, these fees were reasonable under the circumstances.

If the Court reverses the district court's fee denial, Virtual also asks for an award covering the fees it has incurred since mid-July 2013, up to and including those it incurred participating in the injunction hearing and this appeal. *Adsani v. Miller*, 139 F.3d 67, 71 (2d Cir. 1998) (acknowledging that in copyright cases, "an award of attorney's fees may be made for services rendered on appeal as well as at the trial level"). Virtual is happy to submit proof of the amount of those fees to the district court on remand, but is equally amenable to supplying that proof to this Court. *See Simpleville Music v. Mizell*, 511 F. Supp. 2d 1158, 1161 (M.D. Ala. 2007) (finding that the proper forum for a copyright litigant's request for appeal-related attorneys' fees is a Circuit Court of Appeals).

---

145 at Page ID # 4376–77.) The district court never ruled on Virtual's motion.

## Conclusion

Beaulieu claims that this case was "essentially a garden-variety contract dispute" where the parties' "commercial relationship" simply went "sour." (Def.'s Corrected Brief at 35, App. Ct. Doc. 23 at 42.) And as far as Beaulieu is concerned, perhaps that is the truth. Perhaps it actually views willful copyright infringement as "garden-variety" in its normal course of business.

But if it does, it stands alone. There is nothing "garden-variety" about the substantial penalties Congress established for those that intentionally steal another's creative works. There is nothing "garden-variety" about Beaulieu's conscious misappropriation of decades' worth of Virtual's labor. And there is certainly nothing "garden-variety" about the jury's wholesale rejection of Beaulieu's counterclaim and defenses, or its decision to award the highest possible damages it could under the law.

Just as Beaulieu refuses to acknowledge the gravity of its actions, it fails to recognize the weight of the evidence against it. It has not shown a complete absence of evidence in the record from which a reasonable juror could find for Virtual. And it has not shown that the jury abused its almost unfettered discretion to award statutory damages within the bounds set by Congress.

The Court should therefore affirm the jury's damages award in its entirety. Likewise, the Court should correct the trial court's departure from well-established law on attorneys' fees in cases of intentional copyright infringement. It should reverse the denial of Virtual's attorneys' fees motion, award compensation for all the fees and expenses Virtual requested ($152,876), and allow Virtual to obtain an additional fee award for its attorneys' work on post-trial motions, the hearing for injunctive relief, and this appeal.

Respectfully submitted,

Patrick, Beard, Schulman & Jacoway, P.C.

By:    /s/ Michael A. Anderson
       Michael A. Anderson, BPR # 012368
       McKinley S. Lundy, Jr. BPR # 027391
       537 Market Street, Suite 202
       Chattanooga, TN 37402
       (423) 756-7117

       *Attorneys for Virtual Studios, Inc.*

55

## Certificate of Compliance with Rule 32(a)

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 11,569 words, excluding the part of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It was prepared with Microsoft Word, the typeface is the proportionally spaced Century Schoolbook font, and the text is 14-point in size.

/s/ Michael A. Anderson
Michael A. Anderson

*Attorney for Virtual Studios, Inc.*

June 16, 2014.

## Certificate of Service

I hereby certify that I served an exact copy of this document via the Court's electronic filing system or other methods acceptable under the Federal Rules of Civil Procedure to the following:

Thomas Byrne, Esq.
Ann Fort, Esq.
Sutherland Asbill & Brennan LLP
999 Peachtree Street NE
Atlanta, GA 30309

June 16, 2014.

Patrick, Beard, Schulman & Jacoway, P.C.

By:___/s/ Michael A. Anderson_____

F:\WpDocs\CLG\Clients\Virtual Studios\Beaulieu\Appeal\Appeal Brief.doc

**Virtual Studios' Designation of Documents**

| District Court Record Entry Number | Document Description | Page ID Number | Appendix Page Number |
|---|---|---|---|
| R.E. No. 1 | Virtual Studios' Complaint | Pg. ID No. 1–10 | N/A |
| R.E. No. 3 | Supplement to Virtual Studios' Complaint | Pg. ID No. 13–15 | N/A |
| R.E. No. 7 | Beaulieu's Answer and CounterClaim | Pg. ID No. 25–39 | N/A |
| R.E. No. 42 | Virtual Studios' Answer to CounterClaim | Pg. ID No. 155–157 | N/A |
| R.E. No. 46–49 | Beaulieu's Motion for Summary Judgment and Supporting Documents | Pg. ID No. 191–1604 | N/A |
| R.E. No. 51–52 | Virtual Studios' Response to Beaulieu's Motion for Summary Judgment and Supporting Documents | Pg. ID No. 1608–1921 | N/A |

## Virtual Studios' Designation of Documents

| District Court Record Entry Number | Document Description | Page ID Number | Appendix Page Number |
|---|---|---|---|
| R.E. No. 83–84 | Memorandum Opinion and Order Denying Beaulieu's Motion for Summary Judgment | Pg. ID No. 2928–2946 | N/A |
| R.E. No. 99 | Order on Pre-trial Motions | Pg. ID No. 3021–3024 | N/A |
| R.E. No. 110 | Jury Verdict Form (Liability) | Pg. ID No. 3225–3229 | N/A |
| R.E. No. 123 | Jury Verdict Form (Damages) | Pg. ID No. 3338–3340 | N/A |
| R.E. No. 133, 133–1, and 134 | Virtual Studios' Motion for Attorney's Fees, Affidavit of Michael A. Anderson, and Brief Supporting Motion for Attorney's Fees | Pg. ID No. 4299–4313 | N/A |

### Virtual Studios' Designation of Documents

| District Court Record Entry Number | Document Description | Page ID Number | Appendix Page Number |
|---|---|---|---|
| R.E. No. 137 | Beaulieu's Objection to Virtual Studios' Motion for Attorney's Fees | Pg. ID No. 4320–4331 | N/A |
| R.E. No. 146 | Virtual Studios' Reply to Beaulieu's Objection to Attorney's Fees | Pg. ID No. 4378–4385 | N/A |
| R.E. No. 153–154 | Beaulieu's Motion for Judgment as a Matter of Law or Remittitur and Supporting Brief | Pg. ID No. 5098–5132 | N/A |
| R.E. No. 166, 167, and 168 | Memorandum Opinion on Post Trial Motions, Judgment Order, and Injunction Order | Pg. ID No. 5661–5686 | N/A |

## Virtual Studios' Designation of Documents

| District Court Record Entry Number | Document Description | Page ID Number | Appendix Page Number |
|---|---|---|---|
| R.E. No. 169 | Beaulieu's Rule 62 Motion for Stay | Pg. ID No. 5687–5691 | N/A |
| R.E. No. 178 | Order Denying Beaulieu's Rule 62 Motion | Pg. ID No. 5834–5838 | N/A |
| R.E. No. 145 | Virtual Studios' Motion to File Documents Under Seal | Pg. ID No. 4376–4377 | N/A |
| R.E. No. 170 | Beaulieu's Notice of Appeal | Pg. ID No. 5692–5694 | N/A |
| R.E. No. 126 | Trial Transcript (Day 1) | Pg. ID No. 3420–3430, 3450–3452, 3455–3460, 3465–3470, 3484–3490, 3496–3524 | N/A |
| R.E. No. 127 | Trial Transcript (Day 2) | Pg. ID No. 3548–3554, 3660, 3674–3676 | N/A |

## Virtual Studios' Designation of Documents

| District Court Record Entry Number | Document Description | Page ID Number | Appendix Page Number |
|---|---|---|---|
| R.E. No. 128 | Trial Transcript (Day 3) | Pg. ID No. 3738–3746, 3812–3815, 3819, 3821–3822, 3900–3901 | N/A |
| R.E. No. 129 | Trial Transcript (Day 4) | Pg. ID No. 3950–3951, 3955, 3983–3989 | N/A |
| R.E. No. 130 | Trial Transcript (Day 5) | Pg. ID No. 4064–4077, 4090–4091 | N/A |
| R.E. No. 131 | Trial Transcript (Day 6) | Pg. ID No. 4218, 4241, 4262–4264 | N/A |
| R.E. 147 | Injunction Hearing Transcript | Pg. ID No. 4386–4478 | N/A |
| R.E. No. 122 | Printed out screen shots showing infringement (Plaintiff's Exhibits 1, 2 and 3) | Pg. ID No. 3336 | Appendix Volume II, page 454–667 |

### Virtual Studios' Designation of Documents

| District Court Record Entry Number | Document Description | Page ID Number | Appendix Page Number |
|---|---|---|---|
| R.E. No. 111,122 | Retail Photographs showing infringement (Plaintiff's Exhibits 8–15) | Pg. ID No. 3230, 3366 | Appendix Volume III, page 2497–2673 |
| R.E. No. 111 | Copyright Photos (Plaintiff's Exhibits 21–31) | Pg. ID No. 3230 | Appendix Volume II, page 668—2362 |
| R.E. No. 122 | Copyright Registrations (Defendant's Exhibits 9–19) | Pg. ID No. 3336 | Appendix Volume I, page 40–441 |
| R.E. No. 111 | Beaulieu's Supplemental Discovery Responses (Plaintiff's Exhibit 62) | Pg. ID No. 3231 | Appendix Volume III, page 2674–2678 |
| R.E. No. 111 | Sucher–Flavin Email Exchange (Plaintiff's Exhibit 63) | Pg. ID No. 3230 | Appendix Volume III, page 2679–2681 |